# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MARK ANTHONY ADELL,

                Plaintiff,

v.

RANDALL HEPP, CHRIS KRUEGER, MARK SCHOMISCH, and BRUCE SIEDSCHLAG,

                Defendants.

Case No. 17-CV-448-JPS

**ORDER**

        Plaintiff, who is incarcerated at the Wisconsin Secure Program Facility, filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. (Docket #1). This matter comes before the Court on Plaintiff's motion to proceed *in forma pauperis*. (Docket #2). The Court originally assessed Plaintiff an initial partial filing fee of 85 cents. (Docket #5); 28 U.S.C. § 1915(b)(4). However, Plaintiff filed motions to waive payment of the initial partial filing fee, arguing that he has insufficient funds in his trust account and that prison officials will not allow him to overdraft the account or take a legal loan to pay the fee. (Docket #7 and #8).

        Although the records initially presented to the Court suggested that Plaintiff had the ability to pay an initial partial filing fee, the Court credits his representations in his motion that, in reality, he cannot. The Court therefore finds that Plaintiff does not have the assets or means to pay the initial partial filing fee originally assessed. Because the Prison Litigation Reform Act mandates that a prisoner will not be prohibited from bringing a civil action

for the reason that he lacks the assets and means to pay an initial partial filing fee, 28 U.S.C. § 1915(b)(4), Plaintiff will be granted a waiver of payment of the initial partial filing fee in this case. However, he is still obligated to pay the full filing fee pursuant to the statutory formula set forth in 28 U.S.C. § 1915(b)(2). *See id.* § 1915(b)(1).

Having determined that Plaintiff need not pay the initial partial filing fee, the Court next turns to screening his complaint. The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. *Id.* § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Gladney v. Pendelton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327; *Gladney*, 302 F.3d at 774. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (citations omitted); *accord Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim

showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts, and his statement need only "give the defendant fair notice of what the . . .claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see Christopher v. Buss*, 384 F.3d 879, 881 (7th Cir. 2004). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Christopher*, 384 F.3d at 881.

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the Court must then "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of*

*Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009); *see also Gomez v. Toledo,* 446 U.S. 635, 640 (1980). The Court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

Plaintiff alleges that the relevant events occurred while he was incarcerated at Foxlake Correctional Institution ("FCI"), where he was housed from March 11, 2014, until January 24, 2017. (Docket #1 at 5). Plaintiff claims he has chronic ulcerative colitis as a complication of Crohn's disease. *Id.* at 3. According to Plaintiff, this condition means that he has to use the restroom often and that the need to do so arises urgently and without warning. *Id.* In his view, he needs constant access to toilet facilities on demand to avoid the possibility of incontinence. *Id.*[1]

In this case, Plaintiff claims that the warden and other high-level prison officials have created a policy of limiting toilet access to inmates during their recreation time. *Id.* at 5. The recreation facility contains both a gym and a music room. *Id.* Recreation periods last one hour, and inmates can stay for the whole hour or leave at the thirty-minute mark. *Id.* If an inmate leaves the recreation period for any reason, he may not return. *Id.* Further, during recreation periods no inmate is allowed access to a toilet. *Id.* Plaintiff was notified of this policy at the time of his intake into FCI. *Id.* Plaintiff

---

[1] Plaintiff is proceeding on other claims arising from his incarceration at FCI in another action before this Court. *Adell v. Hepp,* Case No. 17-CV-267 (E.D. Wis.). The allegations of this case were part of the original complaint in that case, but the Court dismissed that complaint because it violated the joinder rules as explained in *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff subsequently brought this separate action raising several claims he chose not to pursue in Case No. 17-CV-267.

decided not to attend recreation periods at all because he knew he would be denied toilet access and, if he had to leave to use the toilet, he could not return. *Id.* Plaintiff says that he had a meeting with Defendant Bruce Seidschlag ("Seidschlag") around June 2015, during which Seidschlag forcefully asserted that no exception to the toilet-access ban during recreation time would be made for Plaintiff despite his bowel condition. *Id.* at 6. Plaintiff lodged an inmate grievance on the matter in December 2016, but the grievance was dismissed at each level of review. *Id.*

Plaintiff identifies several legal claims which he believes arise from his factual allegations. These include: (1) deliberate indifference to his need for toilet access, in violation of the Eighth Amendment; (2) deprivation of his rights without due process of law, in violation of the Fourteenth Amendment; (3) denial of equal protection of the law, in violation of the Fourteenth Amendment; and (4) denial of reasonable accommodations for his bowel conditions, in violation of the Americans with Disabilities Act ("ADA") and/or the Rehabilitation Act. *Id.* at 4.

None of Plaintiff's claims state a colorable basis for relief. First, to state a claim under the Eighth Amendment, the plaintiff's allegations must raise the inference that he was denied the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Here, Plaintiff was, at worst, denied toilet access for one hour each day, which does not raise constitutional concerns. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670–71 (7th Cir. 2012) (affirming dismissal of Eighth Amendment claim where absence of grab bars in shower did not deprive inmate of ability to wash but only made it more difficult). In fact, Plaintiff was only denied toilet access if he

chose to attend recreation time, which he says he did not do. In reality, although he mentions the Eighth Amendment in passing in his complaint, it appears that Plaintiff's true claim is that his disabilities should have been better accommodated. *See Strominger v. Brock*, 592 F. App'x 508, 511 (7th Cir. 2014) (on claim that shower chairs should have been provided, "the record suggests at most not that [the plaintiff] was denied life's necessities but only that he did not receive the level of accommodation that he wished").[2]

Next, Plaintiff fails to state a claim for deprivation of due process of law. To the extent he believes that he was denied due process by being subjected to the bathroom ban, this claim must fail because he was notified of the policy from the very start of his incarceration at FCI and was permitted to (and did) object to it. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (observing that procedural due process generally requires only "notice and an opportunity to be heard"). Further, to the extent Plaintiff complains that his inmate grievances were erroneously denied, he has no due process right to gain relief through the grievance process. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected

---

[2]Although he did not identify such a claim in his complaint, the Court further notes that Plaintiff cannot maintain an Eighth Amendment claim of cruel and unusual punishment based on deprivation of exercise. The Seventh Circuit has held that denial of exercise without justification or for extended periods may violate the Constitution, *see Delaney v. Detella*, 256 F.3d 679, 683–84 (7th Cir. 2001), but here no prison official denied Plaintiff access to the exercise equipment. Unlike most cases, in which segregation leads to an inability to exercise, here Plaintiff was able to use the recreational facilities but chose not to because he felt he needed greater accommodation for his bowel condition. This cannot support a claim of cruel and unusual punishment.

by the Due Process Clause, and so the alleged mishandling of [the plaintiff's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim."). Plaintiff states no due process claim where he merely files a grievance and disagrees with the outcome. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005). Thus, no due process claim arises from Plaintiff's allegations.

Third, Plaintiff's equal protection claim cannot proceed because the Supreme Court has not recognized individuals with bowel diseases, like Plaintiff, as constituting a suspect class under the Fourteenth Amendment. *See Mlaska v. Schicker*, Case No. 15-cv-00918-MJR, 2015 WL 6098733, at *11 (S.D. Ill. Oct. 16, 2015) (finding that group of inmates with a certain type of medical condition did not constitute a suspect class). Where a non-suspect class is implicated in such a claim, prison administrators are constitutionally entitled to treat prisoners differently "as long as the unequal treatment is rationally related to a legitimate penological interest." *Flynn v. Thatcher*, 819 F.3d 990, 991 (7th Cir. 2016). A concern for security and order during recreation time, including keeping an eye on inmates moving freely about during recreation, could have rationally animated the bathroom ban. Thus, equal protection principles afford Plaintiff no relief. *See Al-Alamin v. Gramley*, 926 F.3d 680, 686 (7th Cir. 1991) (noting that prisons have legitimate interests in security, crime deterrence, and prisoner rehabilitation).

The result is the same even when Plaintiff's allegations are construed as a "class of one" equal protection claim. A "class of one" claim arises when a plaintiff alleges that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference

in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff's allegations make clear that he was treated just like every other prisoner with respect to recreation time; indeed, the thrust of his complaint is that he should have received different treatment because of his medical condition. Thus, he was not intentionally treated differently from anyone else, and his equal protection claim must be dismissed.

Finally, because Defendants are all individual employees of the Wisconsin Department of Corrections, they are not amenable to suit under the ADA or the Rehabilitation Act. *Jaros*, 684 F.3d at 670; *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). Thus, these claims must also be dismissed.

Despite the failings in the instant complaint, the Court will permit Plaintiff an opportunity to amend it. The Court provides several instructions Plaintiff may find helpful as he crafts an amended complaint. First, the amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056-57 (7th Cir. 1998). In *Duda*, the Seventh Circuit emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading[.]" *Id.* at 1057 (citation omitted); *see also Pintado v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) ("As a general matter, '[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'") (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210,

1215 (11th Cir. 2006)). If an amended complaint is received, it will be screened pursuant to 28 U.S.C. § 1915A.

Second, in order to make out a prima facie case under both Title II of the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005).[3] These statutes protect against both intentional discrimination and failure to make reasonable accommodations for the plaintiff's disability. *Wis. Cmty. Serv. v. City of Milwaukee*, 465 F.3d 737, 746 (7th Cir. 2006). In the prison context, whether accommodations are reasonable must be judged "in light of the overall institutional requirements," including "[s]ecurity concerns, safety concerns, and administrative exigencies." *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 561 (7th Cir. 1996); 28 C.F.R. § 35.130(h). Determining the reasonableness of a particular accommodation, especially in the prison context, is "highly fact-specific" and determined on a case-by-case basis. *Dadian v. Vill. of Wilmette*, 269 F.3d 831, 838–39 (7th Cir. 2001). As noted above, prison officials sued in their individual capacities are not amenable to suit under either statute, but such claims can be made against the state agency in charge of the prison.

Third, it is important to appreciate the limited scope of any potential ADA or Rehabilitation Act claim. Only if Plaintiff can show that Defendants

---

[3]The ADA applies to state prisons, *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998), and because all such institutions receive federal funds, the Rehabilitation Act also applies, *Jaros*, 684 F.3d at 670.

intentionally discriminated against him can he recover damages, and even then they can only be compensatory, not punitive, damages. *Phipps v. Sheriff of Cook County*, 681 F. Supp. 2d 899, 917 (N.D. Ill. 2009); *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). Additionally, to the extent he seeks injunctive or declaratory relief in order to reform FCI's policies, he must show that he is likely to be transferred back to FCI in the future. Otherwise, these elements of his claims are moot. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996).

With these preliminary instructions given for Plaintiff's benefit, the Court leaves it to him to submit an amended complaint that presents actionable claims. If Plaintiff does not submit an amended complaint by the deadline set forth below, he is warned that this case may be dismissed for failure to prosecute. Civ. L. R. 41(c).

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Docket #2) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motions to waive the initial partial filing fee (Docket #7, #8) be and the same are hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the complaint submitted on March 28, 2017 (Docket #1) be and the same is hereby **STRICKEN**;

**IT IS FURTHER ORDERED** that Plaintiff is directed to file an amended complaint on or before **May 2, 2017** which cures the defects in the original complaint as described herein;

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to another institution, the transferring institution shall forward a copy of this Order along with Plaintiff's remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where the inmate is confined; and

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, Plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if Plaintiff is no longer incarcerated at any of these institutions, he will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 18th day of April, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge