# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MARK ANTHONY ADELL,

                Plaintiff,

v.

STATE OF WISCONSIN DEPARTMENT OF CORRECTIONS and JON LITSCHER,

                Defendants.

Case No. 17-CV-448-JPS

**ORDER**

    Plaintiff Mark Anthony Adell ("Adell"), a prisoner, brings this action against the Wisconsin Department of Corrections ("DOC") and its secretary, Jon Litscher ("Litscher"), for their alleged failure to properly accommodate his needs arising from his chronic ulcerative colitis.[1] Specifically, Adell alleges that he was denied the use of toilet facilities during recreation time while incarcerated at Fox Lake Correctional Institution ("FLCI"). The Court allowed Adell to proceed on claims of intentional discrimination and failure to accommodate under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794. *See* (Docket #13). Defendants filed a motion for summary judgment on November 1, 2017. (Docket #23). The motion is fully briefed and, for the reasons stated below, it will be granted.

**1.    STANDARD OF REVIEW**

    Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine

---

[1] Because Litscher is joined only in his official capacity, all references to the DOC herein should be understood to include Litscher.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that [his] case is convincing, [he] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

**2.     RELEVANT FACTS**

    **2.1     Adell's Failure to Dispute the Material Facts**

The relevant facts are undisputed because Adell did not properly dispute them. In the Court's scheduling order, entered May 24, 2017, Adell was warned about the requirements for opposing a motion for summary judgment. (Docket #17 at 3). Accompanying that order were copies of Federal Rule of Civil Procedure 56 and Civil Local Rule 56, both of which describe in detail the form and contents of a proper summary judgment submission. Most relevant here is Local Rule 56(b)(2), which obligates the non-movant on summary judgment to file "a concise response to the moving party's statement of facts that must contain a reproduction of each

numbered paragraph in the moving party's statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon[.]" Civ. L. R. 56(b)(2)(B)(i).

Next, on November 1, 2017, Defendants filed their motion for summary judgment. (Docket #23). In the motion, Defendants also warned Adell about the requirements for his response as set forth in Federal and Local Rules 56. *Id.* at 1–2. He was provided with additional copies of those Rules along with Defendants' motion. *See id.* at 3–12. In connection with their motion, Defendants filed a supporting statement of material facts that complied with the applicable procedural rules. (Docket #25). It contained short, numbered paragraphs concisely stating those facts which Defendants proposed to be beyond dispute, with supporting citations to the attached evidentiary materials. *See id.*

In response, Adell submitted four documents, none of which respond to Defendants' statement of facts in compliance with the Federal and Local Rules. The first is his brief in opposition to Defendants' motion. (Docket #31). It contains a lengthy prose recitation of his version of the relevant events, but it neglects to specifically address the numbered paragraphs set forth in Defendants' statement of facts. Attached to the brief are nearly 100 pages of exhibits, including medical records and inmate grievances. *See* (Docket #31-1). Similarly, Adell's other submissions, which include two of his affidavits and his own proposed findings of fact, provide few citations to actual evidence (the proposed findings of fact cite evidence only twice in eighteen numbered paragraphs), and they do not address Defendant's statement of facts in any fashion. (Docket #32, #33, #34).

Despite being twice warned of the strictures of summary judgment procedure, Adell ignored those rules by failing to properly dispute Defendants' proffered facts with citations to relevant, admissible evidence. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Though the Court is required to liberally construe a *pro se* plaintiff's filings, it cannot act as his lawyer, and it cannot delve through the record to find favorable evidence for him. *See Waldridge*, 24 F.3d at 922; *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989) ("A district court need not scour the record to make the case of a party who does nothing."). Further, while the Court is cognizant that Adell lacks legal training, his utter failure to comply with the rules of procedure is not excusable on that ground alone. Thus, the Court will, unless otherwise stated, deem Defendants' facts undisputed for purposes of deciding their motion for summary judgment. *See* Fed. R. Civ. P. 56(e); Civ. L. R. 56(b)(4); *Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006) (noting that district courts have discretion to enforce procedural rules against *pro se* litigants).

### 2.2 Facts Material to Defendants' Motion

Adell has chronic ulcerative colitis as a complication of Crohn's disease. According to him, this condition means that he has to use the restroom often and that the need to do so arises urgently and without warning.

From March 11, 2014 until January 24, 2017, Adell was housed at FLCI. The prison has a general population recreation area and recreation building which are located close to the housing units. The recreation building contains a gymnasium with basketball courts, handball courts, a music room, and a weight room. There are also several baseball fields and basketball courts in the outdoor general population recreation area. In

addition to the general population recreation area and building, each housing unit has a "passive recreation area," which is a concrete area with a basketball hoop.

The recreation schedule is posted in all housing units. Each unit is eligible to participate in two one-hour recreation periods per day at the general population recreation building. When inmates report to recreation, they are required to stay in the recreation area until the end of the period or leave halfway through, *i.e.*, after thirty minutes. FLCI implemented the "halftime" rule so inmates who wish to may leave recreation early because they are finished with their exercise, or to go to the bathroom, or for medical issues. Inmates participating in recreation are expected to wait until "halftime" to return to their unit so the patrol staff can monitor their movement. Exceptions are made for visits, scheduled appointments, medical emergencies, or with staff permission. These rules are contained in the inmate handbook.

There is generally one officer monitoring the recreation area on first shift and two or more on second shift, along with non-security staff members called recreation leaders. Depending on the number of inmates at recreation and the availability of staff, another officer may assist in monitoring the recreation activities. The officer is either located at the officer's desk, which is located near the entrance of the recreation building where inmates sign in, or the officer walks around the recreation building and area monitoring the inmates' activities.

There is one bathroom located inside the recreation building near the officer's desk. The bathroom has a shower area, one bathroom stall, and two urinals. When entering the bathroom there is a divider wall approximately eight to ten feet long. After nine or ten steps into the bathroom, there is an

open shower area to the left and, to the right, there is a bathroom stall and two urinals.

Based on the layout of the bathroom, it is difficult for staff to effectively monitor inmates who are inside. Consequently, prison officials discovered that inmates had been gathering in the bathroom and engaging in disruptive, threatening, and violent conduct such as gang activity, fights, contraband exchanges, and sexual activity. The security director, along with the recreation department supervisor, therefore made the recommendation to the warden to discontinue the inmates' access to the recreation bathroom. The warden agreed.

On November 20, 2007, the security director and the corrections program supervisor sent a memorandum to all inmates and staff to notify them that inmates would not be allowed to use the bathroom facilities in the recreation building anymore. The memo noted that "[i]n the event an inmate does need to use a bathroom after he arrives at rec, he will be sent back to his housing unit, and the recreation staff will notify the unit staff that he is on the way back to the housing unit. The inmate will not be allowed to return to recreation during that period." (Docket #25 ¶ 34). The memorandum also stated that "[i]nmates who have medical needs that may require use of the bathroom will be provided appropriate accommodation on an as-needed basis. Prior medical verification will be required in these cases." *Id.* ¶ 35. An updated memorandum verifying this protocol was sent to all inmates and staff on September 22, 2016.

Adell transferred to FLCI on March 11, 2014. Throughout his stay at FLCI, Adell had several stints in restrictive housing units, which are generally used to house inmates who violate institution rules or pose a heightened security risk. Inmates housed in restrictive housing are not

eligible to go to recreation in the general population area but must use the recreation facilities in their unit. Pertinent here is Adell's final run in restrictive housing, which occurred from December 12, 2016 until January 24, 2017. On January 24, 2017, Adell was transferred from FLCI to another state prison, the Wisconsin Secure Program Facility ("WSPF").

Upon intake to FLCI, inmates are given a copy of the FLCI Inmate Handbook and Resource Guide. The handbook notifies inmates that to initiate the process for an accommodation under the ADA, they must contact the ADA coordinator by completing a DOC-2530 Reasonable Modification/Accommodations Request form. The ADA coordinator makes a determination as to the appropriateness of the requested accommodation to ensure that services and activities, such as recreation, are accessible to inmates with disabilities. At FLCI, Sarah Feltes ("Feltes") is the ADA coordinator.

When an inmate submits a DOC-2530 form, Feltes reads it to determine what accommodation the inmate is requesting. She then consults with staff from FLCI's health services unit or psychological services unit and reviews WICS, the Corrections database program, to see if the inmate's alleged disability is documented. If the accommodation is for a disability that has already been verified—for example, an inmate asking for a sign language interpreter who has a documented hearing loss—then Feltes decides if FLCI has the capability to accommodate it, or if the accommodation will need to be reviewed by security. Feltes may meet with the inmate if she needs further explanation or clarification.

Adell never submitted a DOC-2530 form to request toilet access in the recreation building. Nor did Adell submit an informal interview/information request to the ADA coordinator regarding the toilet

accommodation. If Adell had used an interview/information request as an ADA accommodation request form, Feltes would have returned the request to him along with a blank DOC-2530 form to complete.

FLCI also has a Special Needs Committee (the "Committee") through the institution's health services unit for inmates who need a special accommodation for the management of a medical condition. The purpose of the Committee is to determine whether an inmate requires a medical restriction or special need based upon medical necessity. The Committee is comprised of a staff representative from health services, a staff representative from security, and a non-security staff representative.

Adell never submitted any requests to health services or the Committee to use the recreation building bathroom as a special need accommodation for the management of his ulcerative colitis. Nor did Adell ever speak to his treating clinicians about a special need to use the recreation building bathroom.

In an inmate grievance dated November 18, 2016, Adell complained about several issues, including the water quality at FLCI and the recreation bathroom prohibition. He requested, among other things, that he be immediately transferred to a different institution. The inmate complaint examiner returned the grievance because it violated DOC rules by raising multiple issues at once. *See* Wis. Adm. Code § DOC 310.09(1)(e). The examiner also instructed Adell to first attempt to resolve his issues by contacting the health services manager and the corrections program director before seeking intervention through the grievance process. Adell did not contact either person but simply tried to resubmit the grievance on November 28, 2016. The examiner therefore recommended dismissal of the

grievance, and the reviewing authority adopted that disposition on December 1, 2016.

Adell filed another grievance on December 5, 2016. In it, Adell raised the issue about his access to the recreation building bathroom and again sought a transfer to a different institution. The next day, the examiner returned the complaint to Adell with instructions to attempt resolution of the issue by contacting the corrections program director and the health services unit manager. Adell again refused to cooperate with the examiner's directions and refiled the complaint on December 7. On December 9, the examiner recommended dismissal of the complaint due to Adell's refusal to cooperate. The reviewing authority dismissed the complaint on December 15, 2016.

Adell's only other grievance relevant to the claims in this case was submitted on February 20, 2017, nearly a month after he was transferred to WSPF. In this grievance, he says he was denied recreation at FLCI because of a policy prohibiting inmates from using the recreation bathroom. The complaint was rejected because it was not filed within fourteen days of the complained-of incident, as required under Wis. Adm. Code § DOC 310.09(6).

3.   **ANALYSIS**

Adell claims that the DOC denied him access to the toilet facilities in the recreation building during indoor recreation and music recreation as an accommodation for his ulcerative colitis, in violation of Title II of the ADA and the Rehabilitation Act.[2] Both the ADA and the Rehabilitation Act

---

[2]In his brief, Adell freely intermingles the standards applicable to a conditions-of-confinement claim under the Eighth Amendment with his ADA and

generally protect state prisoners. *Cassidy v. Ind. Dep't of Corr.*, 199 F.3d 374, 375 (7th Cir. 2000). The Court will address each statute in turn.

### 3.1 Americans With Disabilities Act

At the outset, the Court must set the ADA claim to the side. Whether the DOC has sovereign immunity against claims under the ADA is an open question, except in instances in which the alleged ADA violation is also a violation of a constitutional right, such as a right under the Eighth Amendment. *United States v. Georgia*, 546 U.S. 151, 158–59 (2006); *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 & n.5 (7th Cir. 2012). In *Georgia*, the Court expressly declined to decide whether states are immune from suits for damages arising from conditions that violate the ADA but not the Constitution. *Georgia*, 546 U.S. at 159. The Court has already determined that Adell's allegations did not state a claim for constitutional violations of the Eighth and Fourteenth Amendments. (Docket #13 at 3 n.2). Thus, it is unlikely that Adell can continue to maintain an ADA claim.

This defect has, however, no practical import in this case. The Rehabilitation Act is "materially identical to and the model for the ADA except that it is limited to programs that receive federal financial assistance." *Crawford v. Ind. Dep't of Corr.*, 115 F.3d 481, 483 (7th Cir. 1997); *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). Because Wisconsin receives federal funds for its prisons, this latter element is no impediment to Adell's claims. *Stanley v. Litscher*, 213 F.3d 340, 344 (7th Cir. 2000). The relief under the ADA and Rehabilitation Act is also coextensive. *Jaros*, 684 F.3d at 671. As a practical matter, then, the Seventh Circuit has dismissed a

---

Rehabilitation Act claims, but the Court did not allow him to proceed on a constitutional claim. *See* (Docket #31 at 7–8); (Docket #13 at 3 n.2).

state inmate's ADA claim when stated alongside a Rehabilitation Act claim without addressing the issue of sovereign immunity because the inmate can have but one recovery. *See id.* at 672. This Court will do the same.

### 3.2 Rehabilitation Act

This leaves Adell's Rehabilitation Act claim to consider. The Act provides, in relevant part:

> No otherwise qualified individual with a disability in the United States. . .shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a). "Otherwise qualified" means the plaintiff must show that, were it not for his disability, he would have qualified for the benefit, treatment, or program which he was denied. *Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 120–21 (7th Cir. 1997). "Program or activity" is defined in the Act, in pertinent part, as the operation of a "department, agency, special purpose district, or other instrumentality of a state or local government." 29 U.S.C. § 297(b)(1)(A).

Adell's Rehabilitation Act claim is premised on both intentional discrimination and a failure to provide reasonable accommodations. Either claim requires a showing that: (1) Adell is a qualified person; (2) with a disability; and (3) the DOC denied him access to a program or activity solely because of his disability. *Jaros*, 684 F.3d at 672; *Reed v. Columbia St. Mary's Hosp.*, 236 F. Supp. 3d 1091, 1105 (E.D. Wis. 2017).[3] With respect to Adell's intentional discrimination theory, the Seventh Circuit has yet to decide whether discriminatory animus or deliberate indifference must be proven.

---

[3]Defendants concede for purposes of this motion that Adell has a disability that relates to his ulcerative colitis. (Docket #29 at 12).

*Strominger v. Brock,* 582 F. App'x 508, 511 (7th Cir. 2014). The majority of Circuits that have addressed the issue have adopted a deliberate indifference standard. *See Reed v. Illinois,* 119 F. Supp. 3d 879, 885 (N.D. Ill. 2015). Deliberate indifference "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Duvall v. County of Kitsap,* 260 F.3d 1124, 1139 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001). Under either standard, however, "[m]ere negligence is insufficient[.]" *Strominger,* 58 F. App'x at 512.

Adell's alternative theory is that the DOC failed to make reasonable accommodations to the recreation bathroom ban on his behalf. Refusing to make reasonable accommodations, including making changes to applicable rules or policies when necessary, is tantamount to denying access to a covered program. *Alexander v. Choate,* 469 U.S. 287, 300–01 (1985); *Dadian v. Vill. of Wilmette,* 269 F.3d 831, 838 (7th Cir. 2001). Thus, a defendant can violate the Act by refusing to modify a rule that disproportionately impacts the access of disabled people to a program where necessary to ensure their equal access to the program's benefits. *See Washington v. Ind. High Sch. Athletic Ass'n, Inc.,* 181 F.3d 840, 847 (7th Cir. 1999); *Wis. Cmty. Servs., Inc. v. City of Milwaukee,* 465 F.3d 737, 747 (7th Cir. 2006). In the prison context, whether accommodations are reasonable must be judged "in light of the overall institutional requirements," including "[s]ecurity concerns, safety concerns, and administrative exigencies." *Love v. Westville Corr. Ctr.,* 103 F.3d 558, 561 (7th Cir. 1996); 28 C.F.R. § 35.130(h). Determining the reasonableness of a particular accommodation is "highly fact-specific" and is decided on a case-by-case basis. *Dadian,* 269 F.3d at 838.

Adell's Rehabilitation Act claim cannot proceed under either of his proffered theories. First, the DOC did not deny Adell access to recreation

because of his disability; he was allowed to attend when he was eligible—that is, not in restrictive housing. More to the point, the recreation bathroom prohibition was not put in place to discriminate against individuals with disabilities or prevent them from accessing recreation programs. Rather, it was created because the bathroom was difficult to effectively monitor and inmates were engaging in illegal activities while inside.

After the warden approved the decision, the security director and program director issued a memorandum to all staff and inmates providing notice of the recreation building bathroom closure. The memo specifically carved out an exception for inmates who have medical needs that may require immediate use of the bathroom. The security director notified the inmates in the memoranda that they would need to provide medical verification of their need for the accommodation to use the recreation building bathroom.

As a result, the record confirms that the restriction on the recreation building bathroom was not put in place because of any animus against the disabled. *Strominger*, 592 F. App'x at 511. Even under the less-stringent deliberate indifference standard, Adell does not contest that he never notified the DOC prior to November 2016 that he wished to attend recreation but could not without an exception to the bathroom ban. Consequently, it cannot be said that the prison knew Adell's rights were in jeopardy and failed to act. *See Duvall*, 260 F.3d at 1139. At worst—and this is a generous stretch, to be sure—Adell might be able to show that the DOC was negligent in failing to realize that needed an accommodation, but this is not enough. *Strominger*, 58 F. App'x at 512. Thus, Adell's intentional discrimination claim fails.

Similarly, the DOC did not deny Adell a reasonable accommodation to access recreation. The undisputed facts reveal that Adell never utilized the processes available to him for requesting such an accommodation, whether through the ADA coordinator or the health services unit. A couple of months before his transfer to WSPF, Adell filed a few inmate grievances on the matter, demanding to be transferred to a different institution, but then failed to cooperate in the grievance resolution process. Had Adell followed the directions from the complaint examiner, his request for accommodation would have been routed to the appropriate individuals who could help him. In short, Adell never asked the DOC for a reasonable accommodation regarding the bathroom, and thus he never gave prison officials the opportunity to make one.

It is also notable that once the DOC did receive notice of Adell's bathroom issues, Adell was no longer "otherwise qualified" to receive an accommodation. A person with a disability must be "otherwise qualified" for the activity he seeks to join. *See Mallett v. Wis. Div. of Vocational Rehab.*, 130 F.3d 1245, 1257 (7th Cir. 1997). "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979). Before his inmate grievance of November 18, 2016, no one knew that Adell had any issue related to the recreation building bathroom. Beginning on December 12, when Adell was placed in restrictive housing, he was no longer eligible to participate in general population recreation or music recreation pursuant to separate prison policies which he does not challenge here. He remained in restricted housing until his transfer to WSPF on January 24, 2017. Thus, Adell took himself out of the Rehabilitation Act's protections for much of

the short period during which the DOC was notified of his need for an accommodation.

Adell's response to the evidence is that he was never told he could request an accommodation, and that prison staff made indications to him that no exception to the bathroom ban would be entertained. First, he claims that during an inmate orientation in March 2014, he was told by members of the FLCI recreation staff and other inmates that bathroom access was strictly prohibited during recreation time, without exception. (Docket #31 at 1). He was advised to "plan ahead." (Docket #32 at 1). Additionally, says Adell, Bruce Siedschlag ("Siedschlag"), the FLCI program supervisor, told him during an in-person meeting in April 2015 that the policy was a total bathroom ban during recreation. (Docket #31 at 2). Adell also points to allegedly contradictory and discriminatory application of the rule, inasmuch as inmates who worked at the FLCI recreation facility were allowed to use the restroom there but he was not. *Id.* at 12.

Adell contends that the "great distance" between the recreation building and the housing units meant that if he had to traverse the distance upon feeling the urge to use the bathroom, he would invariably soil himself. *Id.* at 13. He never attended recreation as a result of this worry. (Docket #32 at 3). However, other than his generalized fear of this happening, he does not point to a single instance when it actually occurred.

Adell denies that he was ever provided a copy of the September 2016 memo about the recreation bathroom or a copy of the inmate handbook, *id.* at 2, although he admitted that he did receive such materials through his failure to dispute Defendants' statement of material facts, *see supra* Part 2.2. In either event, Adell asserts that the inmate handbook was unhelpful to him, as it did not explain that his ulcerative colitis constituted a qualifying

disability for ADA purposes. (Docket #31 at 14). Because of this lack of clarity, Adell did not conclude that he would be entitled to make a claim for an accommodation. Adell represents that he did not discover his right to demand an accommodation until late 2016 after doing legal research, and thereafter filed inmate complaints on the issue. (Docket #31 at 2).

The thrust of Adell's complaint in this case, then, is not necessarily that he was denied an accommodation from November 2016 to January 2017, although he certainly takes issue with the denials of his inmate grievances during that period, which he believes were done for purposes of delay and obfuscation. Instead, his central point is that he suffered three years at FLCI without recreation because no one told him he might be eligible for an accommodation. (Docket #31 at 6). In other words, Adell reads into the Act an obligation on the part of the DOC to undertake "reasonable effort[s]" to notify him about the possibility of an accommodation. *Id.* at 11–12. The prison's failure to unilaterally offer Adell an accommodation during recreation time is, to his mind, evidence of a pattern of ongoing, intentional discrimination against him based on his disability. *Id.* at 15–16.

Adell's theory is replete with problems. First, his proffered facts were not properly presented in accordance with the summary judgment procedures that were twice explained to him. *See* (Docket #36). Second, even if the Court accepted as true Adell's version of events, it would make no difference. Adell was told in the inmate handbook and September 2016 memo—which he admitted he received—the nature of the bathroom ban and the availability of ADA accommodation request procedures.

Third, Adell's lack of understanding of the ADA or the inmate handbook did not actually hinder him from raising the issue of whether he

could receive an accommodation. In ADA and Rehabilitation Act cases, "the standard rule is that a plaintiff must normally request an accommodation before liability. . .attaches." *Jovanovic v In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000); *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 803–04 (7th Cir. 2005); *Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 608 (7th Cir. 2012). This duty is "dictated by common sense[,] lest a disabled employee keep his disability a secret and sue later for failure to accommodate." *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996). The plaintiff's request then triggers the defendant's obligation to make reasonable efforts to reach a mutually agreeable and effective accommodation. *Jovanovic*, 201 F.3d at 899. As the Seventh Circuit has explained:

> [r]easonable accommodation under the ADA is a process, not a one-off event. The process begins with the employee, who has the initial duty to inform the employer of the disability. *See Sears*, 417 F.3d at 803–04. Absent special circumstances, like a severe cognitive disability or mental illness, *see Bultemeyer v. Ft. Wayne Cmty. Schs.*, 100 F.3d 1281, 1285–87 (7th Cir. 1996), the employee's initial duty requires that he or she "indicate to the employer that she has a disability and desires an accommodation," *Sears*, 417 F.3d at 803.

*Cloe v. City of Indianapolis*, 712 F.3d 1171, 1178 (7th Cir. 2013), *overruled on other grounds*, *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016).

Adell's ulcerative colitis, while well known to the staff at FLCI, *see* (Docket #31 at 4), did not hinder him from taking the first step to ask what accommodations might be available for him. In this way, his case is less like *Bultemeyer*, where the plaintiff suffered bipolar disorder and paranoid schizophrenia, impairing his ability to even ask for an accommodation, *Bultemeyer*, 100 F.3d at 1285, and is more like *Preddie*, where the Seventh

Circuit held that the employer's duty to accommodate was not triggered simply because it knew the plaintiff was diabetic, *Preddie v. Bartholomew Consolidated Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015). The court noted that "[a]lthough it is fair to assume that the [employer] was aware of Mr. Preddie's diabetic condition, there is no evidence to suggest that Mr. Preddie ever requested an accommodation for this condition," thus dooming his later suit for failure to accommodate. *Id.* Adell's condition had no effect on his powers of communication—his lengthy history of inmate grievances makes that plain—and so there is no reason to excuse his failure to request an accommodation.

Moreover, even if one viewed Adell's condition as obviously in need of accommodation, *see Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 976 (7th Cir. 2009), Adell concedes that he never attended recreation in nearly three years at FLCI out of fear of soiling himself. If the key in these cases is placing the defendant on notice that the plaintiff needs an accommodation, Adell's failure to ever engage in the activity for which he needed an accommodation, or to ever indicate that he would engage in such activity if he had an accommodation, means that the Court cannot fairly charge the DOC with notice about Adell's need for an accommodation with respect to the recreation bathroom policy.

Nor can the Court say, on the state of the record before it, that Adell was unable to request an accommodation because of vague "impression[s]" given to him by the prison staff about the finality of the bathroom ban. (Docket #31 at 14). Again, if Adell had a desire to use the recreation facilities but felt he could not without an accommodation for his medical conditions, it behooved him to initiate the process with a request for the same, even if he felt it might result in summary denial. His situation is analogous to the

exhaustion of remedies requirement for inmate lawsuits under 42 U.S.C. § 1997e. That requirement exists "to alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense of litigation." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005). As a result, prisoners are required to engage the prison's grievance, even if they feel it will be futile. *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005). So too, here, the structure and purpose of the disability statutes is to attach liability to a defendant only if it chooses not to accommodate after a request for the same, or turns a blind eye to a glaring need. Whether Adell believed that prison officials would rebuke him does not matter; he never gave them a chance.

Finally, none of Adell's evidence excuses his failure to participate in good faith in the grievance process, if that could be construed as the interactive negotiation envisioned by the Act to arrive at a reasonable accommodation. *See Beck*, 75 F.3d at 1135. Adell says that the inmate complaint examiner could have done more to advise him about the possibility of an accommodation, *see* (Docket #31 at 2–3), but the handbook was always there for him to read, as was the September 2016 memo regarding the recreation facility bathroom. If Adell had difficulty navigating the grievance review process, *id.* at 3, it was of his own making. As noted in *Beck*:

> [N]either party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of

initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

*Beck*, 75 F.3d at 1135. Adell flouted the instructions of the complaint examiner, and thus the collapse in the negotiation cannot be attributed to the DOC.

Because the evidence in the case establishes that Adell was not subject to discrimination based on his disability and never gave the DOC the opportunity to grant him a reasonable accommodation, his Rehabilitation Act claims must be dismissed.

**4. CONCLUSION**

Viewing the record evidence in the light most favorable to Adell, there is insufficient evidence to raise triable issues of fact as to either of his claims. The record and the relevant authorities oblige the Court to dismiss this case in its entirety.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (Docket #23) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 21st day of December, 2017.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Court